rules, although I'm sure you're all familiar with them. When the yellow light goes on, you have two minutes remaining. When the red light goes on, your time is up. We ask that you please respect the lighting system and end promptly when that red light goes off, unless, and there's always an exception in the law, and unless that is if we have any questions for you that take you over the limit. If we do, we do want you to answer those questions. You don't have to rush to answer them, but please do answer those questions. We wouldn't ask them if we didn't want to hear the answers. Okay, and with that, we're going to get started today with the case of United States of America v. Anthony Rondell Blair. All righty, we'll hear first from counsel for Mr. Blair. Good morning. Good morning. May it please the court. In this case, the government, in its own words, used a liar and a con man as its star witness at trial. The government's use of this witness, Jason Arias, lies at the heart of the two issues I'd like to discuss today. First, the district court erred by denying Mr. Blair's Sixth Amendment intrusion claim because the government was allowed to use tainted evidence derived from an attorney-client intrusion at trial. Second, the district court erred by preventing Mr. Blair from subpoenaing a former prosecutor on case, the one who had called Mr. Arias a liar and a con man, as a character witness at trial. Unless the court would like for me to start elsewhere, I'll start with the Sixth Amendment interference claim. So, in Bercy, the Supreme Court has told us that a third party can interfere with an attorney-client relationship, and there is a violation if there is a purposeful intrusion by an informant, tainted evidence, or disclosure of defense strategy to the government. So, what's your best evidence that any of those things happened here? Yes, Your Honor, we believe that all three of those things happened here. So, first, in terms of the purposeful intrusion, we have the government, who is aware that Mr. Blair is a represented party. Then we have the employing Arias as a confidential informant, a cooperator, and encouraging that cooperator to communicate with the represented party. At no point does the government tell Mr. Arias to, hey, be careful, don't talk about attorney-client privilege things, avoid these topic areas. It's just, hey, are you talking to Blair? Anything new do you have to show? So, that prong, we believe, satisfies the purposeful intrusion, but really, it's the tainted evidence. And so, that, I think, is also what we have met here. I'm not hearing any specifics there, though, right? I mean, there's no evidence that I saw, at least, that the government learned anything about the defense strategy or that Arias influenced it rather than paying for it, right? Am I missing something? Well, there is a disclosure. So, in the text messages that we, that Arias obtained during this time while he was cooperating and Mr. Blair was represented, there are loads of text messages where, essentially, they are talking about the case. And it is very clear from those messages what Mr. Blair's trial defense is going to be, knowledge. So, that is all revealed through those text messages. In addition, the tainted evidence is the text messages themselves. Arias has a cell phone that he only uses to communicate with Blair, records those conversations, and then, at the government's questioning of, are you continuing to record your conversations? Great. And then, Arias turns that phone over to the government, and then, the government gets to introduce that at trial against Mr. Blair. So, how do you resolve, I mean, so, we've got these jailhouse snitch cases, right? Yes. So, like, I think it's Lightburn is the one that the government relies on mostly. What do you say about those and a way to distinguish those? Well, Your Honor, I think the Lightburn case is related to the Messiah claim. And the interference claim is a separate line of an agreement and elicitation of information. That is not required under Bercy. And unfortunately, the only couple cases that the 11th Circuit has really expounded upon in the Bercy standard is Offsheet, which is a little bit different because, in that case, the appellant was raising more of an outrageous government conduct type of claim. And then, there is Roper, which it's just kind of a throwaway line. But Lee versus United States, it is an unpublished case authored by Judge Hall. And that does kind of go into the Bercy standard a little bit more. In that case, the court found that there was... Can you explain? So, maybe I'm just misunderstanding something. So, you say there's tainted evidence, and the tainted evidence is the text messages, right? Part of it, yes. Okay. But in the Jailhouse Niche cases, it's almost exactly the same fact scenario. You know, you've got one guy talking to another guy. The Jailhouse Niche is cooperating with the government and has some incentive to try to get a confession or some information from the other guy. He gets that information, and then he gives it to the government. And we've said, more or less, that as long as that person isn't acting as a government agent, that's okay. Isn't that exactly what we have here? Your Honor, again, those Jailhouse Niche cases are under the Messiah... I get it. I'm just saying, as a factual matter, isn't that exactly the same thing that you're complaining about? I think what distinguishes what happened here is Mr. Blair was represented by an attorney. In those Jailhouse Niche cases, you usually do not have a represented party who is... It's usually somebody who is in pretrial detention. There's nothing... I mean, I don't know all of the case law, but typically there's not any discussion of the person is represented. And at the behest of the government is being, you know, saying, go ahead and talk to this person and elicit information. And in Lightburn, it's a little bit different because in Lightburn, that case, the government just said, or the agent just said, essentially, go be a listening post, right? So that's a little bit different here where we have Arias and Blair engaging back and forth, and Arias prodding Blair on certain issues that are incriminating throughout these text messages. So what is... I guess, how do you define tainted evidence? Maybe that's the question that I have, is what... It sounds like you're saying what makes the evidence tainted is that there was a cooperator that talked to someone who was represented by counsel. Correct. And that is correct. So there was a cooperator who is speaking to somebody who was represented by counsel. But that, to me, is not just... Because cooperators can do what they want. We can't control... You know, the government is not going to be able to control how their cooperators operate. But what's different here is that the government had knowledge that its cooperator was speaking with Mr. Blair and did not tell that cooperator to avoid topics of client-privileged information. So it's a little bit different because... Well, so that's... See, I think that goes to what I think... I mean, I'm not really sure what we meant by tainted evidence, and I'm not sure what that means exactly. But I thought it did mean something like, you got attorney-client-privileged information. And did they get attorney-client privileged information here? Well, Your Honor, I mean, it's unclear because... So in this case, it's just Mr. Arias and Mr. Blair communicating together. So it's not like... In the Bursey case, the Supreme Court case, the undercover informant is actually... Or he's a government agent, but acting as an undercover agent. But he is actually in the room with counsel and the co-defendant. That is not what we have here. What we have here is our client and the cooperator communicating. But the difference... And the court can look to the Lee case, the Eleventh Circuit Lee case, where the agents in that case, in the Lee case, do not... They don't prevent the interference. They don't say, avoid these topics. Or really, you shouldn't be communicating with this person at all because they're represented. And you are as a government agent. But we don't have any cases that say that that's not allowed. And I guess I get that that's what you're trying to get us to say here. But I'm not as sure as you that the fact that a party is represented makes a difference. I mean, I don't recall it coming up in those cases. But I also don't recall it coming up as a reason that the particular interaction was not problematic. Am I missing something on that? In the Lee case, the District Court found that there was that intrusion, that interference, because, in part, the government agents did not prevent the interference and did not curtail the informant from talking to this represented party. And I think that should be the same here, right? When you have a lawyer and the government is aware that a person is represented, it's engaging a cooperator. There really should be... That's essentially the government talking to somebody that's represented through its cooperator, right? The government should not be able to allow to do that because the person is represented. The second thing you wanted to talk about was subpoenaing the counsel. I got to tell you, I don't understand. I mean, the District Court said, look, this would be improper character evidence anyway. This lawyer wouldn't be testifying about this person's, you know, character in the community or based on sort of contact with him. I mean, the lawyer's just... I mean, he's just a DOJ lawyer that investigated the guy. Well, Your Honor, this is not... This is a prosecuting attorney on the case. Yeah, right. And the prosecuting attorney on the case at the bond hearing specifically spoke to Mr. Arias' credibility, calling him a liar and a conman and going into a long tirade about how this person was incredibly... Not credible. I see my time is up. Do you want me to finish? Yes, please finish the answer. So essentially, that government, the prosecutor had made those statements, and he explained that his statements were based on his review of the record and his review of interviewing multiple witnesses. And later, he personally interviews Mr. Arias himself. Find me a case where a DOJ prosecutor is going to say that the defendant is incredibly truthful and has a great character in the community, right? I mean, it doesn't seem at all surprising that that was the conclusion of the prosecutor after engaging in this case or in that case. Your Honor, right. But then that same agency doesn't put up that co-defendant as its star witness at trial and say that this is a credible person who is providing the most damning evidence against our client, which is as to his knowledge. So you have a prosecutor on one hand, the government on one hand, saying this person is unreliable and not credible, and then turning around and putting that person up as its star witness. And at the heart of it, it's really a 701A issue. All that is required for us to have called that person is the opinion has to be rationally based on the witness's perception. We believe that standard was met here, and therefore that is why the District Court erred in not allowing us to call the former AUSA. All right. Thank you. Counsel, you've reserved five minutes for rebuttal. We'll hear next from the United States. Good morning, Your Honors, and may it please the Court. Benjamin Wiley on behalf of the United States. Here, the District Court correctly found that Mr. Blair's Sixth Amendment right to counsel had not been violated. Counsel has raised a few different arguments as to how that Sixth Amendment might have been violated, but the District Court already correctly rejected two of those arguments. And the third argument that I heard this morning, which was raised for the first time in Mr. Blair's reply brief, is that defense strategy was communicated to the government. That argument was not raised at the District Court. It was not raised in Mr. Blair's opening brief, and so it has been waived. But in any event, it's not supported by the record in this case. So I'll take each of the bases for this Sixth Amendment argument that Mr. Blair has raised in turn. First, the District Court already correctly found that there was no intrusion into Mr. Blair's attorney-client relationship by virtue of the government engaging Mr. Arias as a cooperator, even when it knew that Mr. Arias had made the retainer payment for Mr. Blair's counsel. The cases that Mr. Blair has cited and relied upon, like Wood and King, they make clear that there's only a potential for a conflict of interest when a co-conspirator has made a payment to defense counsel. And because there's a potential for a conflict, the government itself raised this with the District Court. There was briefing received by the District Court. The District Court received statements from counsel that was representing Mr. Blair and made findings of that there was no evidence that Mr. Arias had or will have any effect on Mr. Blair's legal strategy or attorney-client relationships. So there was just no evidence that Mr. Blair was ever represented by conflicted counsel. And that's the, you know, intrusion into the Sixth Amendment, right? Those line of cases talks about the, you know, conflicted counsel. I'm not aware of any other basis for how there could have been an intrusion into that relationship here. And so on that basis, the District Court did not abuse its discretion and did not err in making that finding as to that possible intrusion. Mr. Counsel also raised that there was tainted evidence in this case. And the only evidence that I heard being discussed was text messages as between Mr. Arias and Mr. Blair post-indictment. And those text messages were talking, you know, the government actually argued at trial that they appeared to be sort of the two of them trying to manufacture exculpatory evidence. They were talking about what Mr. Arias had told Mr. Blair about what was in these cans during the scope of the conspiracy. The government actually argued against those text messages coming in precisely for that reason. They didn't actually go to Mr. Blair's mental state during the scope of the conspiracy because they were after the conspiracy had already ended. And so there's just simply no tainted evidence that... So counsel says, and I understand your position is that this issue was not preserved, but let's just, for purposes of this argument, address it. Counsel says that the invasion was your obtaining of the defense's theory of the case, that there was no knowledge. That's what counsel says the invasion was. And I mean, you certainly wouldn't argue that the government, after a party is represented, could ask a represented party without counsel and without counsel's blessing what that party's defense strategy would be, right? I do agree with that, Your Honor. Why is this different? Because here, well, one, the government did not ask, there was no agreement between the government and Mr. Arias for Mr. Arias to go gather additional information against Mr. Blair. And so that was, again, a finding by the district court. Because this argument was already raised below that there just was no agreement. There was no evidence of an agreement of the government actually asking Mr. Blair, or Mr. Arias, excuse me, to gather this evidence and promising any sort of benefit to him. So you're saying there's a factual finding by the district court that when Mr. Arias spoke with Mr. Blair, he was not acting as the government's agent? Correct, Your Honor. That was already found below because this was raised as a motion in limine by the defense prior to trial to try to exclude this evidence. And so there was a ruling on that motion in limine by the district court already with those findings. Now, just to further emphasize the point, the text messages themselves, I think counsel said this morning, only that it revealed what the defense strategy would be. And I'm not aware of any cases that say that the defense strategy has been communicated to the government just by virtue of them receiving evidence that would point towards what the defense strategy is probably going to be. I mean, it's an invasion of the defense camp. I mean, that's the problem with that, right? If the government took affirmative steps to learn what the defense was going to be that they otherwise wouldn't have been able to obtain, and they obtain through tainted conversations with the either directly or through an agent, and that defendant is represented and counsel has not, counsel for the defendant hasn't agreed that those conversations can occur, that is an invasion into the defense camp. I mean, that's the problem there. But I think the distinction here, Your Honor, is that the conversations that are going back and forth, it's not Mr. Arias asking Mr. Blair, hey, what are you going to argue at trial? Or Mr. Blair saying, hey, I'm going to tell my lawyer to argue this back and forth. It's just them, as the government argued at trial as to why this evidence shouldn't get in, they're almost like in character as though the conspiracy is still ongoing. And they're talking about, hey, I told you, remember, that the cans only had untraceable cocaine or not chemically cocaine. Or I think the DEA lab reports are incorrect. Because as we argued at trial, it appeared that these two gentlemen were keeping up the ruse, even post-indictment, that they didn't know what was in these cans was actually controlled. So if I understand right, you're drawing a line between sort of a conversation where one co-conspirator tells another, hey, I talked to my lawyer, and we've got a really strong statute of limitations issue, or we think we've got a really strong, I don't know, mistake defense. And this case where the defendant, well, there's two co-conspirators talking together, and they're just saying like, I don't think we committed a very bad crime here. And I think that we should be able to get off. Right? Is that the kind of line you're drawing? That's exactly right, Your Honor. It's just because the conversation that they're having might point to a defense or might be used in support of a defense is not the equivalent of them communicating a defense strategy to the government. I assume you think the answer is different if Arias were acting as an agent at that time? Well, Your Honor, I think if Arias were acting as an agent, then that would really more just put this into the jailhouse informant line of cases. I think the analysis under the, was the defense strategy communicated to the government is more an analysis of what specifically was the contents of those communications. And here it's just the contents of those communications was not communicating a defense strategy. It was just them going back and forth about certainly things that might be able to support a defense strategy, but it's not them actually, you know, Mr. Blair communicating to Mr. Arias what he's going to be arguing at trial. Does it really make that much of a difference as far as the government's ability to prepare for trial goes if they just hear these interactions about knowledge versus if someone explicitly says, comma, and this will be my defense strategy? How much, why is that extra kind of implied piece so important to have explicit? Well, because if there's not some sort of extra in terms of this is actually what the strategy is going to be, then the government presumably wouldn't be able to gather any additional information against a defendant who's been charged because any of that could be evidence that goes towards a defense theory after the right attaches. And I'm not aware of any case that says you can't continue gathering evidence against the defendant. You know, we have post-arrest statements, we have jailhouse calls, all other sorts of ways we get information from defendants after they've been charged. And just because there's information in there, whether if they know that that is being communicated to the government or not, that might support what they're ultimately going to argue as a defense strategy. That does not trigger, in any case I'm aware of, this argument that there's been a communication of the defense strategy. Maybe I was misunderstanding, but I think your friend on the other side might have suggested that some of the jailhouse smidge cases would be different if we knew that the party was represented. I haven't looked, but I suppose that it's likely that a lot of those parties were represented, just based on the timing. Do you think that that is a big difference maker? I don't think it is a difference maker, Your Honor. I mean, the jailhouse smidge line of cases is about after the Sixth Amendment right to counsel has attached. Sure, the Sixth Amendment right to counsel might have attached prior to them actually getting counsel appointed, but that's the important part about the jailhouse line of cases, is the Sixth Amendment right has attached. And I wouldn't be surprised if there are many of those cases where that defendant already has been appointed counsel. Can I ask, so you mentioned a couple of times that the government tried to keep this information out. Could you just explain how the, why we're here about this? What, so the text messages, the defendant moved to exclude the text messages. The district court denied that motion in limine, and then the government, how is it that the government then didn't want them introduced? So, it was based on how the defense was using, was telling the court it was going to use those text messages at trial. The defense's theory at trial was... So, but just be clear, the defense moved to exclude it at a motion in limine pre-trial? Yes. Okay. As part of a more omnibus motion to exclude evidence from Mr. Arias, just exclude his testimony in general, and the information that was from these cell phones. But then at trial, once the court had ruled against that motion in limine, what the defense offered these text messages, these post-indictment text messages, to try to show that what Mr. Blair's state of mind was during the scope of the conspiracy, because the contents of these text messages was, again, Mr. Arias and Mr. Blair sort of, what the government was arguing falsely, talking about what they actually knew was in the cans. Okay. And then at that point, the government objected to the admission of those? Yes, because it was not relevant because it was post-indictment statements after the conspiracy had already ended. And so, the government argued it did not go to what Mr. Blair's mental state actually was during the scope of the conspiracy. So, as to the other issue that counsel raised this morning... Just before you move on, could you just give me a record site for that portion of the transcript at trial or something? I don't have an exact pin site, but it was during one of... The discussion on this and how the defense was going to use the text messages was during one of the breaks, I think, before the cross-examination of Mr. Arias's test... Okay. The cross-examination of Mr. Arias, because that's how the defense was planning to use the text messages. As for the other issue that counsel addressed this morning, the district court did not abuse its discretion in quashing the subpoena to former AUSA Ryan Christian. The district court correctly applied the arbitrary and capricious standard, because bizzard remains good law, and the DOJ's 2E policy is a binding and enforceable regulation. We touched earlier... Counsel touched earlier on whether the evidence would have been admissible, and the district court already made findings that this evidence very likely would not have been admissible. That was as far as the district court had to go, because it was applying the arbitrary and capricious standard. But for the same reasons that the district court found that the evidence would likely not be admissible, we would argue that, in fact, it was not admissible. Under Rule 608 and 701, former AUSA Christian just did not have a sufficient basis to provide a reliable opinion that benefited the jury in terms of the personal knowledge that he had developed during the scope of the investigation. Counsel raised the fact that AUSA Christian did offer some statements at a bond hearing. That was argument by an attorney at a bond hearing. It's not pursuant to the federal rules of evidence, and it's attorney argument. That is just different in character from being able to say that that opinion satisfies the rules of evidence and belongs in front of a jury. Well, you can certainly understand why a defendant would be frustrated with the government saying, in one proceeding, this guy is not truthful, and in his own proceeding, you need to believe everything that this gentleman says. He's a liar. You can see why that would be frustrating. Certainly that would be frustrating, but that's not what happened here, Your Honor. The government at trial, and this goes to why, in any event, there was no error, or the error would have been harmless in quashing the subpoena anyway, is because the government did not present Mr. Arias to the jury as this full truth-sayer. I mean, when the government, in any case, when they're presenting a co-conspirator, it's central to that person's testimony that this person has done some things in the past, but we're going to ask you to consider what this person is saying, but we're going to corroborate what this person is saying with all of the other evidence in the case, all of the other witnesses who are providing similar statements, all of the records that, you know, the documentary exhibits that confirm what Mr. Arias is saying at trial. And further to this point, as to why there was no, why it would have been harmless error to quash the subpoena, is that the defendant had ample opportunity to cross-examine and to impeach the credibility of Mr. Arias. Mr. Arias testified over the course of three days at this trial. The jury got to see him in the witness stand, assess his credibility. The defense was able to impeach him not only on inconsistent statements he had made between his proffer sessions and his trial testimony, but also introduced and discussed his cooperation agreement and his plea agreement and the motives that he might have had in order to, based on the testimony that he was providing and the benefits that he might receive based on the testimony he was providing. So there's just nothing in the record to suggest that one additional opinion by a former prosecutor would have changed the jury's understanding of the evidence in this trial and would have actually made a difference. And that's why that would have been harmless error in quashing the subpoena. Thank you, Mr. Wiley. All right, we'll hear a rebuttal now. With respect to the district court's ruling on the interference claim, the district court's ruling just focused on the payment. The fact that Arias paid for Mr. Blair's attorney and we did argue that that is part of the intrusion that occurred here, but we also argued that there was tainted evidence, there was a purposeful intrusion, all of these things. And so the district court's focus just on the payment and not addressing the rest of our argument is part of why the district court erred in finding that there was no Sixth Amendment violation. So counsel for the government says that the district court made a factual finding that Mr. Arias was not acting as an agent for government when he engaged in these text messages with Mr. Blair. Is that correct? Yes, Your Honor. So when the district court analyzes the Messiah claim, the district court finds that Arias is not acting as an agent. However, we believe that that is an incorrect finding because at the time that, the timeline is this. Mr. Arias has a proper session in September. In October, he signs a cooperation agreement with the government. This cooperation agreement, it's in the record and it talks about he has a duty to tell the truth, he has to provide any documents, recordings, it goes, you know, goes on. You don't have a tremendous amount of time. I'm going to try to speed you up a little bit by asking a question. Does, is there any evidence, because you've got to show that this finding of fact is clearly erroneous. So what is the evidence in the record that shows that Mr. Arias was actually acting at the behest of the government when he engaged in these text conversations and that he was attempting to obtain additional information? There is a cooperation agreement in place prior to him. Just because there's a cooperation agreement doesn't necessarily mean that he was doing it at the government's behest. There are lots of times when the government says, these are your directions, this is what you should do, don't do anything we tell you not to do. So what is the evidence that he was doing, he was doing this at the government's behest? In addition to the cooperation agreement, he has a conversation with Agent Rutherford, who is one of the agents on the case. And during this conversation, he asked Mr. Arias, what is going on with the people that you're cooperating against, including Mr. Blair? Are you still recording? Is there anything new? That is in the record, and it's our position that that essentially is encouraging him implicitly to continue these conversations and report back, record what you learn, and give it back to us. So that is in the record what our evidence would be of showing that he is doing this as an agent of the government. In terms of, there was some questioning about defense strategy and, you know, in the text messages, the defense, you know, Mr. Blair wasn't saying, I talked to my lawyer and my defense is going to be X. That's not how people talk in the real world. That's how us lawyers talk, right? We talk about how, what the elements are, what our defense is going to be. But when Mr. Arias is talking with Mr. Blair, these aren't just two co-conspirators. Mr. Arias at this point is already cooperating, right? He is owned up, he is fessed up to his conduct. So he's at that point not a conspirator anymore. Mr. Blair has been charged, also not a conspirator. And so it's very different in that, yes, their communication is not going to sound exactly like what is going to happen at trial because that's not how people talk. The text messages is how people really talk, and that is really where that defense strategy is being communicated. Going on to the 701 evidentiary issue, I do not think this error was harmless. Yes, there was an opportunity to impeach Mr. Arias at trial, but the type of evidence, character evidence that we wanted to put up was so fundamentally different than all the other impeachment evidence that we had. If you have a government, if you have the government saying someone is not truthful, is a liar, is a lying liar, is a con man, and then us not being allowed to show at trial that that same entity, that same body is now putting up this witness and asking the jury to believe what this witness is saying. What's your response to counsel's point about that evidence is corroborated? I know interestingly in Georgia, there's an evidentiary rule that you can't be convicted on self-interested testimony from another party alone. There has to be corroborating evidence. That's an interesting and probably effective rule, but here there was corroborating evidence for a lot of what was testified to, right? Well, Your Honor, that's for the jury to decide, but this is our defense strategy and how we want to put up our witness, and we were hampered from putting up this crucial character witness because the district court erred in finding that we didn't meet the basic tenets of 70A. The court said, you know, 701 requires a pretty serious foundation. That is not what 701A says. All it says is rationally based on a witness's perception, and we had that here. So for those reasons, Your Honor, we believe that the district court erred. It was not harmless, and we ask that you reverse. All right. Thank you very much, counsel. Thank you.